And the next case on calendar is therefore Blach v. Dovey. Good morning, Your Honors. John Jordan on behalf of Petitioner Rodney Blach. May it please the Court. Blach. Thank you. Well, we switch now to the older problem of equitable tolling. I guess what I'd like to say is I'm sure the California prison officials had their reasons for what they did here, but it would be hard to imagine what prison officials could do even worse than this to prevent somebody from timely filing a habeas petition. I understand the pro se pleadings were probably hard to read in the district court, and the district court didn't have, you know, an attorney assigned for the petitioner to bring it out. So it's understanding that, and they were quite long, although they were very neatly written. But there was a wealth of details in there that detailed again and again that his legal files were seized. Just to focus on the second seizure that happened at Mule Creek on August 26th. This is after his initial files have already been seized at Calipatria. He's reconstructed them. He's gotten a new set, and they're seized again. And then he puts in his petition over and over again that they then start seizing his files on almost a weekly basis, he says. And he's got nine seizures in nine weeks, in the fall, while the clock is ticking. So it's very hard to file a habeas petition because every time you get close to writing it, it's seized, and you have to start again, and again, and again. Roberts, couldn't your client have submitted a generic habeas form detailing generally the areas of concern, at the same time move to stay the action pending the return of any seized legal papers? Well, he actually, of course, looking ahead, Your Honor, he did use and always used the generic form that added to it. But this is his first petition. He, I think, understood, as perhaps other Petitioners didn't understand, that you really have one chance to file a Federal habeas petition. And I don't think it's unreasonable for him to want to put in a full and complete petition with all his grounds so he knows that he's not going to be said he's filing a successive petition if he tries to add something later. I think that's reasonable that he tries to file all his claims in one full, complete petition. And eventually, he was able to do that. If you left him alone, he files his petitions, as the Court knows here. He keeps filing things with the Court. He gets his work done. It may be a little longer than I would file, but he does get it done. And if you scan through his habeas petition that he found in the district court, there are ineffective decisions of counsel claims, there are other claims in there that, on a quick reading, seem to have merit. So so I'm a little troubled by the application of the Ramirez case to the facts we are presented with. What's your response? It seems, Ramirez seems to say that your client would have to show he's unable to file any pleadings in any court in order for the relief he seeks to have the, the statute begin running again. What is your response to that? Well, Your Honor, to me it seems like kind of a catch-22. In any case that's eventually before Your Honors, the petitioner has eventually filed a petition. Eventually. But in this case, it seems as if at the time he is complaining about, he was filing matters in State court. I disagree. It seems to me he's doing two or three things at the same time. He's filing claims in State court trying to get his work done. He's also trying to compile this petition, but it keeps getting seized. And to help that, he's also filing eventually the 19-whatever, 81 action to try to stop it. So it seems to me he's really doing simultaneously two or three things here. He is compiling his petition because there's, you know, they're seizing something every, every week. It's not like they're just, when they come in, there's something to seize. They're seizing his legal files. It seems to me that Ramirez says if he has the wherewithal to file in State court, then he's not completely incapable of filing his habeas petition in Federal court. That, it seems that Ramirez would hold for that proposition. Judge Ralston, I agree. But he is trying to file in State court and in Federal court at the same time, and he is preparing that petition. But it has to be the same claims. It's not just any filing. It has to be his claims in any form. Yes. And so did the State. He filed in State here. And I believe he was also at the same time preparing his Federal petition. Same, but same claims. The same claims. But what prevented him was they were being seized. You know, I just briefly, before the argument today, sketched out a chart. And as he put in his papers in ER 312, if you accept when the judge, the district court judge, says the clock should have started on March 24th, 2004, 5 days later, he was placed in administrative segregation. He stayed there for 4 months. He wasn't released, according to his papers, in ER 367 until July 29th. Then he's transferred and he puts in his papers that he lost his complete contact with his – you know, he's not transferred with his papers. They met him up a month later at Mule Creek. He's at Mule Creek one day and his legal papers are seized. Okay. But how does he file those claims in State court? Some papers he was able to file. He's working on two things at once, as I understand it. Really, three things at once. But the paperwork that he's trying to file here keeps getting seized. I think that's what he's saying. He could file. Why couldn't he just take what he had on State and move it into Federal court? It says any claim in any – the claim in any form. But I think that's exactly what he was trying to do. But when he was preparing that form using, as the front sheet, the, you know, the boilerplate petition, it kept getting seized. That's how I understand what was happening to him. He'd get it ready. He'd be ready to file it. It would be seized. So some things got through and others didn't. What didn't get through here was his ability to finish the complete petition. And do – where did the State filing get accomplished in relation to the seizures that he's saying interrupted his ability to file in Federal court? That, Your Honor, I'd have to look up. I know it was at the same time. I know he was able to file, frankly, the 1981 action at the same time. But – and again, since we're dealing here with a summary dismissal and taking his facts as stated as true in the district court, it does seem that he's clearly saying, I'm writing this petition, I'm trying to write it, but it's getting seized. I really can't fault him for doing two or three things to try to stop those seizures so he can finish the petition. Okay. I'll submit it, Your Honor. Thank you, Your Honor. You have some rebuttal time if you need it. Thank you. May it please the Court. Seth Shalit for the Appellees. Appellant asserts he should have had the opportunity to fully and completely state all of his grounds and that he was prevented from doing so. And I think that's a slight overstatement. He obviously has many, many, many, many, many grounds that he believes he should be asserting. But what he should have been doing was asserting the claims that he had exhausted state court. That's a statutory requirement. It was elaborated on in pinholster. And that required perhaps two documents, his petition for review and his state habeas petition that he had filed in the state court of appeal. He doesn't need 11 boxes of documents. He needs those two. He could have taken those documents, used the form and filed. He didn't do that. In fact, he refused at one point to take documents because he would rather fight about his having in cell access to all of his documents. Well, that's not extraordinary circumstances and it's not diligence. Absent diligence, absent extraordinary circumstances, he is not entitled to 219 days of equitable tolling. If the Court has questions, I'll be happy to attempt to answer them. Otherwise, I'm prepared to submit. Thank you, Your Honors. Any other questions? Thank you. We appreciate your representation. Thank you. Thank you both, counsel. Case is submitted. Just for planning purposes, we will hear argument in the next case and then we will take a short break between Thurston and Borkhouse. Good morning. I'm Phillip Brooks representing Mr. Thurston. Excuse me. In case I didn't say so, the last case was submitted. I need to say that for the record. I think you did, but I could be mistaken. All right. Belts and suspenders. Go ahead. Well, in this case, we're not dealing with application of a state rule like the 30 to 60 days. We're strictly dealing with equitable tolling of the EDPA one-year deadline. And the reason that's important is because that gives this Court more flexibility and it gives the Court more, well, flexibility in applying equitable doctrines and fashioning a flexible approach to the case that will do justice to both sides. Except you have a much higher burden on equitable tolling. You've got to prove extraordinary circumstances. Right. But on the other hand, in the Ninth Circuit's recent decision in Trudeau v. Runnels, the Court explained that many of the circumstances that are present in this case are well supported as being found extraordinary circumstances for purposes of equitable tolling. And primary among them, I think, is the fact that counsel that was hired to do the state habeas in this case failed to communicate with Mr. Thurston despite him writing over 15 letters to him and trying regularly to get in touch, failed to provide him with a copy of the petition that he did file, and failed to tell him it had been filed, failed to tell him when it was denied, and basically just cut off all communication with Mr. Thurston while retaining possession of his case files and materials until much, much later. He was hired in May of 2005, and Mr. Thurston didn't get his materials back until June of 2008. So that's an extraordinary circumstance that justifies equitable tolling in this case. And there's, of course, the 32 days in August and September of 2008 when Mr. Thurston was placed in administrative segregation. And the Ninth Circuit and other circuits have also often found that that's a circumstance that is extraordinary when, as happened here, as Mr. Thurston alleged in his petition, he was deprived of his legal materials and unable to work on the case while he was in Ad Seg. And then five days after being released, he got his Federal petition filed. Counsel, just so I understand what the time period we're looking at. Okay. So statutory tolling was granted. I mean, equitable tolling was granted for the period between August 9th and 2006 and June 30th, 2008, right? By the district court. That's right. So Mr. Thurston wanted tolling of the time period between June 30th, 2008 and September 23rd, 2008, right? That's right. Okay. So this was the time he was in administrative segregation. Thirty-two days of that period at the end of it. But even 32 days wouldn't help him, right? He would still be short by an additional period. Okay. And so why doesn't that prevent equitable tolling from helping him? What explains that those other days, that the 32 days, even if you give him credit for the 32 days, how do you, I think it's 50-some days still short? I understand. And I think that brings us down to really the question that I haven't seen addressed in other cases. And I've tried to address it as best I can in my briefing in this case. Which is, is it reasonable under the circumstances for a man in Mr. Thurston's position to believe that under the Federal law he's going to be in a lot of trouble if he files a mixed petition, one that has exhausted issues, of which there are seven, and unexhausted issues, that was the three others that he was trying to exhaust? And is it reasonable for a man in his position to think that he'd better find some way to exhaust those issues before going to Federal court? Or the court may dismiss his mixed petition because it's mixed, and since the EDPA deadline has already expired, he's out of Federal court forever. So basically, you're conceding that there's a 53-day gap. That's right. That's unaccounted for, giving him the benefit of all of the time the district court gave and the time in administrative segregation. There's still a 53-day gap. Right. And unless, I mean, we say that that time is covered by the fact that he is being reasonably diligent under the circumstances and should be granted equitable tolling while he's doing what he thinks is necessary to exhaust his other three claims so that he won't be going into court with a mixed petition. Of course, you know, if he was a lawyer and he was aware of Ryans v. Weber, then he would know he should be filing a stay and obey petition. But, you know, this is a complicated area of the law. And he got a letter from his counsel, which kind of was a mixed bag, that said the safest course would be to file prior to May 11, and it goes on to qualify that. Right. At least he was advised that he had a safe course and he was being hyper-diligent, which is ironic, but he was trying to, you know, chase up and down the state system to get them all in one petition. His counsel for the state argued in the last, or a state, argued in the last case, you're Right. And I think that we have to keep in mind also that the letter he got from his appointed appellate counsel from his direct appeal is from the same lawyer that wouldn't raise these three claims for him in the state court in the first place. So I think she's talking from a position of, you know, the seven claims that she raised for him that were exhausted with a petition for review are the claims that he ought to be going to federal court with. And he had that advice and he had that choice. That's right. That's right. So his problem was, what about these additional claims, and should he give them up forever or should he be trying to exhaust them and get them into federal court? Well, he blew a year before filing with the state appeal. Well, Your Honor, he filed his state – he filed his superior court state habeas within a very short time after he learned personally from the California Supreme Court clerk that the Bergersen habeas petition there had been denied. I think he filed in the superior court within a month after learning that. So I don't think it was a year period where he was sitting on his rights or not pursuing his rights diligently, because he was still trying to find out what was going on with the petition that he didn't know had already been denied. Okay. I think you want to save the rest for rebuttal. If I'd like to save the rest of my time for rebuttal, thank you. May I please the Court? Peggy Ruffray for the Respondent. Your Honors, this is a case where the magistrate judge gave the petitioner every burden and every benefit of the doubt. He has already granted equitable tolling for every possible circumstance that came up. First of all, there actually should be a statutory tolling issue here that would preclude relief, because that first state habeas petition that was filed by counsel was denied as untimely, so the statute actually expired during that period of time. But the State didn't raise that. We raised it belatedly. Yes. But of course Let's assume you waived it. Well, if that is the case, which is what the magistrate judge did. So in a sense, he was giving the defendant that benefit of the doubt, which was an entire year until the first habeas petition was denied. And he did allow that time to not be tolled. And then the judge did allow tolling for the attorney's negligence in not informing the petitioner of when the habeas petition had been denied. Then he allowed. What's interesting about this case is that, as adverted to with the Defendant's Counsel, is here we have a case where he's actually being hyperdiligent. He's going back, trying to exhaust claims so he can put a full petition together. Of course, there is a procedure that lawyers might know about. I'll tell you, until I came on this court, I would, and having been on this court, I never want to be in prison trying to figure out how to get any kind of relief whatsoever. It's a very complicated process. So what should we make of that? And I think it's interesting that the defense has been very clear about the fact that he's even got a letter from a lawyer who says, you know, the safe course would be do this, but if you really, you're going to have to exhaust claims in order to get them heard. So then he sets out to do it. It's not a case of he's just sitting on his rights. Well, the only claims he raised in those later State habeas petitions were claims where he was complaining about his State habeas attorney, which actually aren't even constitutional claims, because there's no right, constitutional right to effective assistance on habeas. So those claims couldn't have been heard in Federal court anyway. He was upset that his attorney hadn't told him, so he wanted to air those complaints in the State court. But here's what the magistrate judge had to say about that when the magistrate judge decided to not toll for that. He could not reasonably presume he had carte blanche in this court to commence a new round of State habeas petitions long after the statutory ADPA deadline had passed. That's at ER 25. So at that point, he certainly was aware that there had been all of these circumstances. At this point, I'm talking about where the Petitioner does have all of the facts at his command. He knows that his attorney filed the petition on the last day. He knows that some additional time has gone by when he wasn't aware of the denial. And then instead of immediately filing his Federal petition, he starts this other round, and that's what the magistrate judge says, I can't give him tolling for that. I can give him equitable tolling for everything else, but not for that. And then the final piece of it is the time when he was in administrative segregation. Well, even if we give him tolling to the time he supposedly got his file, which, again, that was a generous construction. It was just his allegation, June 2008, the magistrate judge said, I'll give him until June 30, 2008. And at that point, he had his file. He says that he had gotten his entire file, and he knew that the time had run out. He had no time left. And at that point, there clearly was nothing stopping him from filing his petition. And he had even already filed these other State habeas petitions. So he has everything at that point. And he did nothing for this, I think it's a 53-day period. Then he went into administrative segregation and no longer had his files. But it was that period beforehand where there really is no explanation. And if the only assertion of equitable tolling for that period is that this is a complex area of law, then if he's granted equitable tolling for that, then the exception swallows the rule, because that's the case in every case. Right. Okay. Thank you. Thank you. I'd just like to look at the time. One other factor in the timeline here, which is the denial of Mr. Thurston's pro per habeas petition in the California Supreme Court. That occurred in August, late August of 2008. And it was five days after that denial, which if we assume that's what he's looking at, he has to get that done to exhaust. Five days after that is when he was placed in administrative segregation. Five days after he got out of ADSEG is when he filed his Federal petition. So that's another important factor. And I think that, with due respect, I believe the district court didn't really understand what Mr. Thurston was trying to do with his additional round of State habeas litigation. It seems to me clear from the pleadings that Mr. Thurston thought that he could exhaust the things that Mr. Bergerson appeared to have defaulted by making an ineffective assistance of counsel claim. And if you look at California law, that's a reasonable assumption. I've cited the Holloway decision where failure to plead former jeopardy was excused, you know, under the rubric of ineffective assistance of counsel. So it's not a crazy idea for a person to think that ineffective assistance claim could revive a claim that would otherwise be defaulted. If the Court has no further questions, I'm prepared to submit the matter. Kennedy. Okay. Thank you. Thank you, counsel, both of you. Thank you. And the case is submitted. All right. We'll take a short recess. Thank you.
judges: Mills, Fisher, Rawlinson